# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MEGAN G., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 19 C 5237 |
| ) | |
| ANDREW M. SAUL, ) | Magistrate Judge Finnegan |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER

Plaintiff Megan G. seeks to overturn the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and Plaintiff filed a motion for summary judgment arguing that the Commissioner's decision should be reversed and the case remanded. The Commissioner responded with a brief in support of affirming the decision. After careful review of the record and the parties' respective arguments, the Court now grants the Commissioner's motion.

## BACKGROUND

Plaintiff applied for DIB on September 16, 2016, alleging disability since September 7, 2016 due to anxiety, depression, chemical dependency, panic attacks, bipolar disorder, and social anxiety disorder. (R. 170, 203). Born in October 1976, Plaintiff was nearly 40 years old as of the alleged disability onset date and was at all times a younger person. (R. 170); 20 C.F.R. § 404.1563(c). She has a high school diploma and lives with her husband and two youngest children. (R. 37, 204). Plaintiff worked for

approximately 17 years doing accounts receivable/payable work for a children's book company owned by her family, but she quit on September 7, 2016 because she was no longer able to perform the job duties. (R. 39-41, 204). She has not worked since that date. (R. 41).

The Social Security Administration denied Plaintiff's applications initially on February 9, 2017, and again upon reconsideration on August 29, 2017. (R. 68-94). Plaintiff filed a timely request for a hearing and appeared before administrative law judge Gregory Smith (the "ALJ") on July 30, 2018. (R. 30). The ALJ heard testimony from Plaintiff, who was represented by counsel, and from vocational expert Julie Bose (the "VE"). (R. 30-67). On October 26, 2018, the ALJ found that Plaintiff's major depressive disorder, generalized anxiety disorder, substance abuse addiction in remission, and degenerative disc disease of the lumbar spine are severe impairments, but that they do not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 15-18). After reviewing the evidence, the ALJ concluded that Plaintiff retains the residual functional capacity ("RFC") to perform light work involving: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and frequent stooping, kneeling, crouching, and crawling. (R. 18). In addition, Plaintiff cannot work in an environment with more than moderate noise; she is limited to performing simple, routine, and repetitive tasks, but not at a production rate pace (i.e., no jobs that require quotas); she can have only occasional interaction with the public; and she is limited to simple work-related decisions. (*Id.*).

The ALJ accepted the VE's testimony that a person with Plaintiff's background and RFC would be unable to perform her past relevant work, but could perform a significant

number of other jobs available in the national economy, including laundry folder, housekeeping cleaner, and mail clerk. (R. 22-23). The Appeals Council denied Plaintiff's request for review (R. 1-6), leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by this Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

Plaintiff's arguments in support of reversal or remand are conclusory, undeveloped, and largely lacking in legal or record support. From what the Court can gather, it appears that Plaintiff believes the ALJ: (1) erred in weighing opinions from her treating physicians; and (2) made a flawed RFC determination that did not properly account for her subjective statements regarding her symptoms. For reasons discussed in this opinion, the Court finds that the ALJ's decision is supported by substantial evidence.

## **DISCUSSION**

### A.  **Standard of Review**

Judicial review of the Commissioner's final decision is authorized by 42 U.S.C. § 405(g) of the Social Security Act (the "SSA"). In reviewing this decision, the court may not engage in its own analysis of whether Plaintiff is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "'displace the ALJ's judgment by reconsidering facts or evidence or making credibility determinations.'" *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010) (quoting *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007)). The court "will reverse an ALJ's determination only when it is not supported by substantial evidence, meaning 'such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion.'" *Pepper v. Colvin*, 712 F.3d 351, 361-62 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)).

In making its determination, the court must "look to whether the ALJ built an 'accurate and logical bridge' from the evidence to [his] conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). The ALJ need not, however, "'provide a complete written evaluation of every piece of testimony and evidence.'" *Pepper*, 712 F.3d at 362 (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted)). Where the Commissioner's decision "'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required." *Hopgood ex rel. L.G. v. Astrue*, 578 F.3d 696, 698 (7th Cir. 2009) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

**B.    Five-Step Inquiry**

To recover disability benefits under the SSA, a claimant must establish that she is disabled within the meaning of the SSA. *Snedden v. Colvin*, No. 14 C 9038, 2016 WL 792301, at *6 (N.D. Ill. Feb. 29, 2016). A claimant is disabled if she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to law for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a). In determining whether a claimant suffers from a disability, an ALJ must conduct a standard five-step inquiry, which involves analyzing: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4)

if the claimant does not have a conclusively disabling impairment, whether [s]he can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (citing 20 C.F.R. § 404.1520). If the claimant meets her burden of proof at steps one through four, the burden shifts to the Commissioner at step five. *Moore v. Astrue*, 851 F. Supp. 2d 1131, 1139-40 (N.D. Ill. 2012).

**C.     Analysis**

**1.     Treating Physician Opinions**

Plaintiff's primary argument in support of reversal and remand is that the ALJ erred in failing to give controlling weight to the opinions from three of her treating physicians: internist Sanjeev Joshi, M.D., psychiatrist Pradeep Thapar, M.D., and internist Vlad Badescu, M.D. (Doc. 15, at 5-6; Doc. 26, at 2, 3-4). It is well-settled that a treating source opinion is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Of course, this rule applies only to "medical opinions," which the Social Security Administration defines as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). *See also Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016) (medical opinions are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature

5

and severity of a claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, physical and mental restrictions, and residual functional capacity.") (internal quotations omitted).

Rather than point to specific medical opinions from her treating physicians that satisfy these requirements, Plaintiff directs the Court to a laundry list of citations to her treatment notes. (Doc. 15, at 3-4; Doc. 26, at 2-3) (citing R. 340, 342, 862, 867, 1003, 1005, 1298-1360, 1472, 1553, 1561, 1565, 1614, 1622, 1628).[1] Those records reflect that: Plaintiff complained to Dr. Joshi of lower back pain in September and October 2013 (R. 862, 867); Dr. Thapar diagnosed Plaintiff with major depressive disorder, recurrent, moderate, and generalized anxiety disorder ("GAD") in August 2014 (R. 1003, 1005); Plaintiff was sad and depressed during an exam with Dr. Thapar in February 2016 (R. 340); Plaintiff had an MRI in February 2016 that showed degenerative changes of the lower lumbar spine, worse at L5-S1, causing stenosis of the left lateral recess and left neural foramen (R. 342); Plaintiff received outpatient behavioral group therapy between May 10 and June 21, 2016 due to prescription drug addiction (R. 1298-1360, 1472, 1553); Plaintiff exhibited moderate paravertebral muscle tenderness in the lumbar area during an exam with Dr. Badescu on September 9, 2017 (R. 1565); Plaintiff told psychiatrist Arlene Paden, M.D., on December 5, 2017 that she was "really down, sad and sleeping a lot" (R. 1628); Plaintiff was irritable, depressed and anxious during a therapy session with Elizabeth Whitehead on January 30, 2018 (R. 1622); Plaintiff told Dr. Badescu she felt well with no joint or muscle pain on April 7, 2018 (R. 1561); and an exam with Dr. Paden on June 19, 2018 was normal. (R. 1614).

---

[1] Plaintiff also cites R. 326, but that is merely a request for records from Dr. Thapar.

6

The problem for Plaintiff is that none of these treatment notes constitutes a "medical opinion." This Court follows the approach of those courts that have distinguished between treatment notes containing only symptoms and diagnoses, which generally are not medical opinions, and treatment notes providing a "prognosis, a discussion of what [the claimant] could do despite her impairments, or an assessment of her physical restrictions," which are medical opinions. *Horr v. Berryhill*, 743 F. App'x 16, 20 (7th Cir. 2018) (citing *House v. Berryhill*, No. 1:17-CV-2109-SEB-TAB, 2018 WL 1556173, at *6 (S.D. Ind. Mar. 30, 2018)) (findings from cardiopulmonary stress test report summarized by a treating physician "strain the regulatory definition of a 'medical opinion.'"). Plaintiff does not provide, and this Court is unaware of, any authority suggesting that treatment notes that merely describe symptoms or a diagnosis amount to medical opinions.

The medical records Plaintiff cites here document her subjective complaints and diagnoses, but say nothing about her prognoses, her physical or mental restrictions, or her functional abilities or limitations. Nor did the Court find any treating medical opinions elsewhere in the record, including among the 120 pages Plaintiff references generally as "Exhibits 5F, 6F, 7F, 13F, and 15F." (Doc. 15, at 4; Doc. 26, at 3). Plaintiff cannot overcome this lack of evidence with a conclusory assertion that "[t]he record clearly state [sic] doctor's opinions." (Doc. 26, at 4). *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Since the treatment records are not medical opinions, the ALJ did not commit reversible error by failing to afford them controlling weight or to otherwise evaluate them under 20 C.F.R. § 404.1527(c).

For similar reasons, there is no merit to Plaintiff's objection that the ALJ erred in affording more weight to the opinions from the State agency psychological reviewers than to the non-existent opinions from her treating physicians. (Doc. 15, at 5). On February 5, 2017, David Voss, Ph.D., found Plaintiff capable of adapting to work situations and changes that occur in the usual workplace with reasonable support, but indicated that she is likely to be more successful in a work environment with low stress. He thus restricted Plaintiff to performing work involving simple instructions and routine/repetitive tasks, with limited social demands. (R. 75-77). Howard Tin, Psy.D. affirmed this assessment on August 24, 2017. (R. 89-91). The ALJ gave these opinions partial weight, accepting that Plaintiff is limited to performing simple, routine, and repetitive tasks that are not done at a production rate pace, meaning no jobs that require quotas. (R. 18, 21). To address evidence that Plaintiff is sometimes frustrated and angry despite being able to act appropriately in social situations, the ALJ also imposed some additional restrictions, namely, Plaintiff can only make simple work-related decisions with no more than occasional interaction with the public. (*Id.*).

Plaintiff argues that her treating doctors "paint a more serious [picture of her] problems or group of problems tha[n] the [State agency] examiners," but she merely directs the Court to the same record citations noted earlier, along with a reiteration of the general rule that treating physician opinions are entitled to controlling weight in appropriate circumstances. (Doc. 15, at 5) (citing *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)) ("A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record."). Plaintiff makes no

8

argument as to whether or how the opinions from Drs. Voss and Tin are flawed, and offers no cogent explanation as to why the ALJ erred in giving those opinions partial weight. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (concluding ALJ could rely on opinions from State agency doctors, and "[m]ore importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

Viewing the evidence as a whole, there are no medical opinions from Drs. Joshi, Thapar, Badescu, or any other treating physician of record, and the ALJ's decision to give partial weight to the State agency opinions is supported by substantial evidence. Plaintiff's request to reverse the ALJ's decision for further consideration of this issue is denied.

**2.  RFC Determination and Subjective Symptom Evaluation**

Plaintiff next argues that the ALJ erred in finding her capable of performing light work despite her "behavioral issues, psychological issues, back issues and obesity." (Doc. 15, at 4). A claimant's RFC is the maximum work that she can perform despite any limitations. *See* 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, at *1-2. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012).

As noted, the ALJ found that Plaintiff has the RFC to perform light work involving: frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and frequent stooping, kneeling, crouching, and crawling. (R. 18). In addition, Plaintiff cannot work in an environment with more than moderate noise; she is limited to performing

9

simple, routine, and repetitive tasks, but not at a production rate pace (i.e., no jobs that require quotas); she can have only occasional interaction with the public; and she is limited to simple work-related decisions. (*Id.*).

Relying on the same list of medical notes discussed earlier, Plaintiff claims that her history of treatment and diagnoses, as well as "her symptoms, diseases and resulting limitations, clearly show someone in great distress who cannot work . . . at any job in the national economy." (Doc. 15, at 5). In support, Plaintiff provides only bald assertions and conclusory arguments without any legal or factual analysis. For example, Plaintiff states that she "has treated with doctors regularly and has had a series of medical issues" that the ALJ "failed to give proper weight to." (Doc. 15, at 4). Plaintiff also claims "[t]he cites of the record in this brief clearly show diagnosis of stenosis and mental disorders." (*Id.* at 5). And Plaintiff says "[t]he substantial evidence that is shown in her doctor's records and opinions is very high." (Doc. 26, at 2). What is missing is any connection between specific records, Plaintiff's functional abilities, and the ALJ's decision. "It is not [the reviewing] court's responsibility to research and construct the parties' argument." *Kathy H. v. Berryhill*, No. 14 C 2131, 2019 WL 3716814, at *5 (N.D. Ill. Aug. 7, 2019) (quoting *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010)). *See also United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("A skeletal 'argument,' really nothing more than an assertion, does not preserve a claim. . . . Judges are not like pigs, hunting for truffles buried in briefs."). For this reason, Plaintiff's arguments on this issue have largely been waived. *Crespo*, 824 F.3d at 674.

Nevertheless, the Court has done its best to determine whether there is any merit to Plaintiff's assertions. The answer is no.

10

### a. Physical Treatment Records

The first available medical record related to Plaintiff's physical impairments is from July 9, 2013, when Plaintiff saw Dr. Joshi complaining of left shoulder pain, numbness in her hands and fingers, fatigue, and pain in her feet and legs. (R. 869). A physical exam was largely normal, showing no musculoskeletal symptoms. (R. 854-55). Plaintiff saw Dr. Joshi four more times through February 20, 2014 with varying complaints of back pain, foot pain, and abdomen pain, but her exams remained essentially normal. (R. 865-67, 873-74, 876).

On October 29, 2015, more than a year and a half after Plaintiff last saw Dr. Joshi, she sought treatment from Navneet Singh, M.D., due to acute bronchitis and sinusitis. (R. 358). She also complained of lower back pain for the previous 3-4 days and asked for pain medication. (*Id.*). On exam, Plaintiff had tenderness in the low back in both paraspinal areas without any muscle spasm. (R. 360). Dr. Singh prescribed acetaminophen #3 and recommended back stretches. (R. 361). Plaintiff returned to Dr. Singh on February 10, 2016, once again complaining of lower back pain lasting 2-3 days with some radiating pain in the leg. (R. 354). Dr. Singh noted paraspinal tenderness and palpable muscle spasms on movement. (R. 356). A February 27, 2016 MRI showed degenerative changes of the lower lumbar spine, worse at L5-S1, causing stenosis of the left lateral recess and left neural foramen. (R. 20, 352, 352-53).

At an appointment on March 17, 2016, Dr. Singh recommended that Plaintiff see a neurosurgeon due to evidence of nerve root compression on the MRI. Plaintiff did not want to pursue a surgical intervention and requested medication instead. (R. 347). Dr. Singh prescribed Tylenol with codeine and Flexeril. (R. 349). Plaintiff's last visit with Dr.

Singh was on April 20, 2016, when she complained that her back pain continued to get worse. (R. 344). Dr. Singh discontinued the Tylenol with codeine, prescribed prednisone and tramadol, and referred Plaintiff to a pain management clinic. (R. 346).

The following month, on May 18, 2016, Plaintiff started treating with Dr. Badescu. She reported chronic lower back pain for the previous 5 years at a level of 4-6/10. (R. 1106). At the same time, Plaintiff denied having any joint or muscle pain, and a physical exam was largely normal. (R. 1106-07). Dr. Badescu assessed herniated nucleus pulposus at L5-S1 on the left and instructed Plaintiff to return in 4 to 6 weeks. (R. 1107). Plaintiff instead returned 9 months later on February 11, 2017 for an annual physical. Though Plaintiff had applied for disability benefits in September 2016, she reported no joint or muscle pain and an exam was normal. (R. 1104-05). When Plaintiff saw Dr. Badescu for a follow-up on September 9, 2017, she complained of occasional lower back pain flare-ups occurring more than twice per month and usually lasting 2-3 days. (R. 20, 1103, 1565). On exam, she exhibited moderate paravertebral muscle tenderness in the lumbar area, but she had full range of motion and full strength of 5/5 in her neck, back, arms, and legs, and no obvious motor deficits. (R. 20, 1103, 1105). Dr. Badescu once again diagnosed herniated nucleus pulposus at L5-S1 on the left and prescribed a Medrol Dosepak for pain and Robaxin for muscle spasm. (R. 20, 1104).

During her next appointment with Dr. Badescu on November 4, 2017, Plaintiff reported that her back hurts mostly in the morning for 1-3 hours and improves with activity. She also said that sometimes her leg and feet become numb. (R. 1563). Dr. Badescu ordered a physical therapy consultation but there is no evidence that Plaintiff pursued this treatment. (*Id.*). Plaintiff last saw Dr. Badescu on April 7, 2018. At that time, she was

feeling well overall with no joint or muscle pain on exam, and no complaints related to her lower back or otherwise. (R. 20, 1561).

### b. Mental Treatment Records

Turning to Plaintiff's mental treatment, the first available record is from August 19, 2014, when she started receiving psychiatric care from Dr. Thapar. She reported feeling very depressed despite being on Seroquel and Zoloft (prescribed by internist Dr. Joshi), and she appeared anxious and unhappy on exam. (R. 1002-004). Dr. Thapar diagnosed major depressive disorder, recurrent, moderate, and generalized anxiety disorder ("GAD"). He prescribed Cymbalta, trazodone, and clonazepam. (R. 1005). At regular follow-up appointments with Dr. Thapar through January 2016, Plaintiff denied having any psychiatric symptoms or problems. Her behavior was appropriate and "uneventful"; her mood was euthymic with no signs of depression or elevation; her speech was normal and logical; she exhibited intact insight and judgment; and she showed no signs of anxiety or attentional difficulties. (R. 329, 331, 333, 335, 337, 1006, 1008, 1010, 1012, 1014, 1016, 1018, 1020, 1022, 1024-25).

Plaintiff saw Dr. Thapar again on February 15, 2016 and for the first time since August 2014 reported depressive symptoms that were "chronically present." (R. 340). Dr. Thapar noted signs of moderate depression, a sad demeanor, depressed thought content, and a short attention span, but no signs of anxiety. (*Id.*). He added Xanax to Plaintiff's medication regimen and instructed her to return in 4 weeks. (R. 341). Nine days later, on April 29, 2016, Plaintiff went to the Silver Cross Hospital ED for evaluation of prescription medication abuse. (R. 362). She received inpatient treatment until May

9, 2016, transferred to outpatient behavioral group therapy from May 10 to June 21, 2016, then started aftercare on July 1, 2016.  (R. 381, 409, 1298-1360, 1472).

Shortly thereafter, on July 20, 2016, Plaintiff had an initial psychiatric evaluation with Arlene Paden, M.D.  (R. 812).  Plaintiff said she was sleeping a lot and isolating herself, and feeling very defeated because her anxiety and depression were not under control.  (R. 812).  On exam, however, she was relaxed with normal speech, euthymic mood, appropriate affect, and linear thought processes.  (R. 813).  Dr. Paden diagnosed major depressive disorder, recurrent episode, severe degree without mention of psychotic behavior; GAD; and opioid abuse in remission.  Plaintiff's medications included Cymbalta, lamotrigine, trazodone, gabapentin, and hydroxyzine.  (R. 814).  Over the course of the next two years, Plaintiff had regular appointments with Dr. Paden and a therapist, Elizabeth Whitehead.  Plaintiff complained of anxiety, depression, and panic attacks, but exams were often relatively normal.

For example, between August 9, 2016 and June 19, 2018, Plaintiff was generally cooperative with fair to good eye contact; her speech was slow but coherent and normal; she was alert and oriented; her concentration was largely good; and she had linear thought processes.  (R. 19, 802, 805, 807, 810, 825, 838, 841, 844, 847, 849, 851, 1054, 1055, 1614, 1617, 1620, 1623, 1625, 1626, 1628, 1630, 1634).  Though Plaintiff's judgment was impaired at exams on May 11, 2016, November 22, 2016, and November 7, 2017 (R. 19, 433, 802, 1630), her insight and judgment were both fair to normal on February 11, August 1, August 15, and September 12, 2017, and on January 2, January 30, and February 27, 2018.  (R. 19, 837, 1052, 1055, 1105, 1619, 1622, 1625).

With the exception of April 25 and August 15, 2017, Dr. Paden and therapist Whitehead routinely described Plaintiff's mood and affect in 2017 as dysthymic, anxious, dysphoric, bland, depressed, blunted, flat, angry, and frustrated. (R. 19, 806, 808, 825, 837-38, 841, 844, 847, 849, 851, 1052-53, 1056, 1068, 1621, 1631, 1634). By January 2, 2018, however, Plaintiff's mood was euthymic and her affect was brighter. (R. 19, 1626). This continued at appointments on January 30, April 24, and June 19, 2018. (R. 19, 1614, 1617, 1623).

### c. RFC Analysis

Plaintiff does not address most of these records or explain how they demonstrate that she "cannot walk, sit or stand for any appreciable amount of time," or function in a workplace due to anxiety and depression. (Doc. 15, at 4, 5). None of Plaintiff's treating physicians imposed any limitations on her mental or physical functioning, or indicated that she is incapable of performing a restricted range of light work as set forth in the RFC. With respect to Plaintiff's mental abilities in particular, for the reasons stated earlier, the ALJ reasonably accepted the uncontroverted State agency reviewers' opinions that she is capable of making simple work-related decisions and performing simple, routine, and repetitive tasks, not at a production rate pace (i.e., no jobs that require quotas), with only occasional interaction with the public. (R. 18, 21). "[C]ourts within this Circuit have repeatedly held that '[t]here is no error' in the formulation of an RFC 'when there is no doctor's opinion contained in the record [that] indicates greater limitations than those found by the ALJ.'" *Hosea M. v. Saul*, No. 18 C 2926, 2019 WL 5682835, at *7 (N.D. Ill. Nov. 1, 2019) (quoting *Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018)). *See also*

*Castile*, 617 F.3d at 930 (ALJ reasonably found it "illuminating and persuasive on its face that none of Castile's doctors opined that she was unable to work.").

Plaintiff seems to believe that her MRI results and medical diagnoses (including herniated nucleus pulposus, major depressive disorder, GAD, and obesity) prove that she lacks the ability to work in any capacity. But "[Plaintiff] having been diagnosed with these impairments does not mean they imposed particular restrictions on her ability to work. . . . It was [Plaintiff]'s burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018). Plaintiff has failed to make such a showing in this case. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (affirming RFC determination where the plaintiff "just lists a variety of symptoms (such as pain in her extremities and headaches)" because "pointing to various diagnoses and complaints and saying that they might hinder [the plaintiff] is insufficient to establish the existence of a functional limitation."); *Ivair M. v. Berryhill*, No. 18 C 3884, 2019 WL 2085139, at *4 (N.D. Ill. May 13, 2019) ("Instead of pointing to any specific errors in the RFC, Plaintiff recites his diagnosis, treatment, and complaints. But this does not establish work-related limitations or show that the ALJ should have included additional limitations in the RFC."); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) ("A person can be depressed, anxious, and obese yet still perform full-time work.").

Absent medical records or opinions supporting her claim of disability, Plaintiff argues that the ALJ should have accepted her own testimony regarding her limitations. (Doc. 15, at 4, 6; Doc. 26, at 3). The regulations describe a two-step process for evaluating a claimant's own description of her impairments. First, the ALJ "must consider

whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, at *2. If there is such an impairment, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." *Id*. In evaluating a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). An ALJ's assessment of a claimant's subjective complaints will be reversed only if "patently wrong." *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

Once again, Plaintiff does not point to specific testimony the ALJ should have credited, or explain how the ALJ's analysis of her subjective statements was "patently wrong." Her conclusory assertion that "[t]he ALJ gives no substantial reason to doubt the severity of Plaintiff's condition and their effects other than his opinion that her testimony is not credible" is wholly insufficient to support a remand on this issue. (Doc. 15, at 6). Moreover, the ALJ did provide some good reasons for discounting Plaintiff's subjective statements regarding her limitations. The ALJ fairly observed that Plaintiff's claims of disabling symptoms are not supported by the objective medical records, which show that despite some abnormalities, she "had mostly normal findings on [mental] examinations," full strength and range of motion in her neck, back, arms, and legs, and a steady and normal gait with no obvious motor deficits. (R. 20-21). The ALJ also described Plaintiff's medications (and lack of reported side effects) and activities of daily living, and noted that she never pursued even conservative treatments for her pain such as physical therapy or

17

injections. (R. 16-18, 20). The ALJ's decision in this case may not have been perfect, but neither was it patently wrong. *Dawson v. Colvin*, No. 11 C 6671, 2014 WL 1392974, at *10 (N.D. Ill. Apr. 10, 2014) (citing *Schreiber v. Colvin*, 519 F. App'x 951, 961 (7th Cir. 2013)).

Having found that the ALJ did not commit reversible error in determining Plaintiff's RFC, the Court concludes that the ALJ likewise acted reasonably in accepting the VE's testimony concerning the jobs Plaintiff is able to perform. (Doc. 15, at 5). It is well-established that "both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). "Reliable testimony from a VE is sufficient to satisfy the substantial evidence standard at step five." *Iversen v. Berryhill*, No. 16 C 7337, 2017 WL 1848478, at *2 (N.D. Ill. May 8, 2017) (citing *Overman v. Astrue*, 546 F.3d 456, 464 (7th Cir. 2008)).

Here, the ALJ asked the VE hypothetical questions that expressly incorporated all of the limitations supported by the medical record. (R. 64-65). Plaintiff does not argue otherwise or cite specific evidence indicating that the VE's testimony was flawed or unreliable. Plaintiff cannot secure a remand in this case with a conclusory assertion that she "cannot stand or sit to do laundry work, cannot lift or move around to perform housekeeping jobs and certainly cannot stand or move around to perform the job of a mail clerk." (Doc. 15, at 5).

"As the Supreme Court observed fairly recently, substantial evidence is not a high standard, and requires only evidence that 'a reasonable mind might accept as adequate.'" *Richard C. v. Saul*, No. 19 C 50013, 2020 WL 1139244, at *5 (N.D. Ill. Mar. 9, 2020)

18

(quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).  Viewing the record as a whole, a reasonable mind can easily accept as adequate the ALJ's RFC determination, his reasons for disbelieving Plaintiff's claimed limitations, and his reliance on the VE's testimony.  Plaintiff's request for remand on these issues is denied.

## **CONCLUSION**

For the reasons stated above, Plaintiff's Motion for Summary Judgment [15] is denied, and the Commissioner's request to affirm the ALJ's decision is granted.  The Clerk is directed to enter judgment in favor of the Commissioner.

ENTER:

Dated: May 25, 2021

_____
SHEILA FINNEGAN
United States Magistrate Judge